FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 31, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GERALD P.,[1]<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,[2]<br><br>Defendant. | No. 2:21-CV-00037-ACE<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS<br><br>**ECF Nos. 19, 21** |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 19, 21. Attorney Chad Hatfield represents Gerald P. (Plaintiff); Special Assistant United States Attorney Jeffrey E. Staples represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 4. After reviewing the administrative record and the

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

briefs filed by the parties, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff protectively filed an application for Disability Insurance Benefits and Supplemental Security Income on August 2, 2018, alleging disability since January 27, 2018. Tr. 17, 92, 185-200. The applications were denied initially and upon reconsideration. Tr. 126-29, 132-37. Administrative Law Judge (ALJ) Mary Ann Lunderman held a hearing on July 20, 2020, Tr. 34-69, and issued an unfavorable decision on September 1, 2020. Tr. 14-32. Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on November 13, 2020. Tr. 1-6. The ALJ's September 1, 2020 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on January 15, 2021. ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.

*Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On September 1, 2020 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 14-32.

At step one, the ALJ found Plaintiff, who meets the insured status requirements of the Social Security Act through March 31, 2023, had not engaged in substantial gainful activity since his alleged onset date. Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairments: obesity, bilateral peroneal tendonitis, left ankle and foot osteoarthritis, and mild cervical degenerative disc disease. *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id*.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform light work, with the following limitations:

> [S]tanding and walking must be limited to two hours in an eight hour day. The climbing of ramps and stairs must be limited to frequently, while the climbing of ladders, ropes, or scaffolds must be entirely precluded from work duties as assigned. In addition, stooping (bending at the waist), kneeling, crouching (bending at the knees), and crawling must be limited to occasionally. Finally, within the assigned work area concentrated exposure to extreme cold and vibration must be avoided.

Tr. 21.

At step four, the ALJ found Plaintiff was unable to perform past relevant work. Tr. 25.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of small products assembler II, electronics worker, and marker. Tr. 26-27.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the alleged onset date through the date of the decision. *Id.*

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and Title XVI of the Social Security Act. The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ properly evaluated Plaintiff's symptom complaints; (3) whether the ALJ conducted a proper step-three analysis; and (4) whether the ALJ conducted a proper step-five analysis. ECF No. 19 at 6.

## DISCUSSION

A.      **Medical Opinions**

Plaintiff contends the ALJ improperly evaluated the medical opinion evidence. ECF No. 19 at 8.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings. *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may explain how the ALJ considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* Supportability and consistency are explained in the regulations:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The Ninth Circuit recently addressed the issue of whether the new regulatory framework displaces the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and

legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id*. at 792.

    1. Dr. McGinnis

In August 2018, Plaintiff's podiatrist, Shani McGinnis, DPM, completed a Documentation Request Form for Medical or Disability Condition on behalf of Washington State DSHS and rendered an opinion of Plaintiff's level of functioning. Tr. 284-87. Dr. McGinnis reported Plaintiff's diagnosis was chronic tendonitis. Tr. 284. Dr. McGinnis indicated Plaintiff's condition limited his ability to work, look for work, or prepare for work, and explained Plaintiff "cannot stand or [weight bear] on feet for more than 20 min[utes an hour]." *Id*. She further indicated Plaintiff was unable to participate in such activities "if standing/walking" but that he could participate 31-40 hours per week "if [a] sit down job." *Id*. Dr. McGinnis opined Plaintiff was limited to sedentary work but that his condition was not permanent and would likely limit his ability to work for three months. Tr. 285. Dr. McGinnis noted she was providing and monitoring Plaintiff's treatment plan, which consisted of physical therapy and injections at that time, but she also explained "if not better [with physical therapy], then MRI" would be indicated. *Id*.

Three months later, in November 2018, Dr. McGinnis completed another Documentation Request Form for Medical or Disability Condition on behalf of DSHS and rendered an opinion of Plaintiff's level of functioning. Tr. 456-59. Dr. McGinnis reported MRI results showed a peroneal tendon tear that required

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

surgical correction. Tr. 456. She opined Plaintiff was unable to work, look for work, or prepare for work, explaining Plaintiff was "unable to bear weight, or stand for any length of time." *Id*. She indicated Plaintiff was severely limited, defined on the form as unable to lift at least two pounds or unable to stand or walk. Tr. 457. Dr. McGinnis opined the condition was not permanent, but would limit Plaintiff's ability to work, look for work, or train for work for six to 12 months. *Id*.

Thirteen month later, in December 2019, Dr. McGinnis completed a third Documentation Request Form for Medical or Disability Condition on behalf of DSHS and rendered an opinion of Plaintiff's level of functioning. Tr. 462-64. Dr. McGinnis opined "Plaintiff has had a slower recovery process for the L[eft] surgical foot" and was also "having [increased] pain [and instability] on the R[ight] foot, requiring rehab." Tr. 462. Dr. McGinnis opined Plaintiff was limited to 1-10 hours work, looking for work, or preparing for work, explaining Plaintiff was "unable to work on his feet. As he is still recovering from surgical procedure . . . slower progress [and] requiring more time for rehab." *Id*. She opined Plaintiff was limited to sedentary work requiring sitting only, with no walking or standing. Tr. 463. She opined the condition was not permanent, but would limit Plaintiff's ability to work, look for work, or train or work for six to 12 months. *Id*. Dr. McGinnis explained Plaintiff was attending physical therapy but if this was not successful he would "need another MRI [with] possible surgical correction of R[ight] foot and will maybe need further work up on the L[eft] foot." *Id*.

The ALJ considered Dr. McGinnis' opinions together. Tr. 25. The ALJ concluded the opinions were not particularly persuasive because they were temporary in nature and the record did not support permanent sedentary limitations. *Id*. Plaintiff contends the ALJ erred because Plaintiff's limitations lasted more than 12 months, meeting the durational requirement, the ALJ provided boilerplate findings to reject the medical opinion and incorrectly found Plaintiff demonstrated unremarkable physical exam findings since his most recent surgery,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

and because the opinions are consistent with and supported by the longitudinal record, including treatment notes. ECF No. 19 at 9. Defendant contends the ALJ reasonably concluded Dr. McGinnis' limitations were temporary, reasonably found Dr. McGinnis' opinion inconsistent with other evidence in the record, and that the ALJ's conclusions are supported by substantial evidence. ECF No. 21 at 7-8.

First, the ALJ found Dr. McGinnis' opinions were "temporary in nature and for periods of three to 12 months in the context of an injury or surgical procedure." Tr. 25. Limitations lasting less than 12 months are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. §§ 404.1505(a), 416.905(a) (requiring a claimant's impairment to last or be expected to last for a continuous period of not less than twelve months); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physician's short-term excuse from work was not indicative of "claimant's long-term functioning"). Here, as described *supra*, in August 2018 Dr. McGinnis initially determined Plaintiff's limitations would last for three months, based on a diagnosis of tendonitis. Tr. 284-85. After an MRI within those three months indicated a more serious injury that required surgical repair, however, Dr. McGinnis explained Plaintiff's limitations, including inability to bear weight or stand for any length of time, were expected to last another six to 12 months. Tr. 456-58. By December 2019, well over a year from her initial opinion, Dr. McGinnis explained Plaintiff's recovery from surgery was slower than expected and that Plaintiff remained "unable to work on his feet. As he is *still* recovering from [a] surgical procedure . . . slower progress . . . requiring more time for rehab." *Id.* (emphasis added). She noted continued problems with the left foot/ankle and that he was also experiencing increased instability in the right foot and extended her estimate of how long Plaintiff would be so limited another six to 12 months at that time. Tr. 462-64. Defendant contends the ALJ reasonably found the limitations were not permanent, but as Defendant is well aware, under the

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

1  regulations an impairment does not have to be permanent, it must last or be
2  expected to last for a continuous period of not less than twelve months. ECF No.
3  21 at 6-7; 20 C.F.R. §§ 404.1505(a), 416.905(a).
4      Dr. McGinnis' opinions also appear consistent with treatment records
5  showing ongoing recovery and issues with his ankles. In August 2019, for
6  example, Plaintiff's physical therapist reported to Dr. McGinnis that Plaintiff was
7  making gains but "continue[d] to have limitations with prolonged standing,
8  walking and uneven surfaces that does put him at higher fall risk," and "his
9  progress will be slower due to the longevity of symptoms and limitations in
10 functional activities prior to surgery." Tr. 531. In October 2019, Dr. McGinnis
11 noted "it has been 7.5 months since surgery. He has been starting to make
12 consistent progress with his left ankle." Tr. 609-10. In February 2020, however,
13 she noted he was having difficulty finding transportation to physical therapy at that
14 time. Tr. 621. Upon physical exam instability was observed bilaterally, he had left
15 foot reproducible pain, and his gait was altered; he also had right ankle swelling,
16 and stiffness and pain were noted with palpation. Tr. 622. Dr. McGinnis noted his
17 reports of continued bilateral ankle pain and indicated they were waiting on
18 approval of an MRI on the right side; she provided steroid injections in both ankles
19 and indicated Plaintiff was to continue with weight bearing, strengthening, and
20 balance exercises bilaterally. Tr. 621-22.
21     The ALJ's conclusion that Dr. McGinnis' opinions were not particularly
22 persuasive because they were temporary in nature is not supported by substantial
23 evidence.
24     Next, the ALJ found Dr. McGinnis' opinions were not supported by the
25 record. Supportability and consistency are the most important factors an ALJ must
26 consider when determining how persuasive a medical opinion is. 20 C.F.R. §§
27 404.1520c(b)(2), 416.920c(b)(2). The more relevant objective evidence and
28 supporting explanations that support a medical opinion, and the more consistent an

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

opinion is with the evidence from other sources, the more persuasive the medical opinion is. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). Additionally, the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ must consider all the relevant evidence in the record, however, and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

The ALJ concluded the "record does not support permanent sedentary limitations. For example, following [Plaintiff's] most recent surgery, there was only slightly decreased ankle range of motion" but "otherwise the [Plaintiff's] physical examination was generally unremarkable." Tr. 25 (citing Tr. 448-54). In support of her conclusion, the ALJ cited to one finding, decreased range of motion in his ankles, from the physical exam at Plaintiff's March 2019 consultative examination (CE). *Id*. Review of the CE report, however, shows findings upon physical exam including antalgic gait, Plaintiff was unable to perform heel walking, he could only perform toe walking with "difficulty due to . . . pain," and he could only perform tandem walk "with difficulty." Tr. 453. The consultative examiner, Dr. Sindu, opined Plaintiff was limited in his ability to stand and walk based on his exam findings. Tr. 454. In the explanation used to discount Dr. McGinnis' opinion, however, the ALJ found that the physical exam at the CE showed "only slightly decreased ankle range of motion." Tr. 25. While earlier in the decision the ALJ did note other findings from the 2019 CE, she also misstated the record, as she found that Plaintiff was able to perform all walking tests and concluded the exam was "nearly unremarkable." Tr. 23; *see* Tr. 453. Review of the evidence into 2020 shows ongoing pain with objective findings including persistent antalgic gait and reduced range of motion, and his providers note

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

continued weakness and instability resulting in limitations in his ability to balance and stand. *See, e.g.*, Tr. 496-8, 516-17, 531, 633-34.

The ALJ erred in selectively citing evidence from one physical exam to discount Dr. McGinnis' opinion, and also misstated findings from the same exam, resulting in a mischaracterization of the record. Additionally, the record as a whole, including the physical exam cited by the ALJ, shows relevant evidence that the ALJ did not discuss. Further, the ALJ failed to articulate how the factors of consistency and supportability were considered as required by the new regulations. The ALJ's conclusion that Dr. McGinnis' opinions are not particularly persuasive because they are not supported by the record is not supported by substantial evidence.

    *2. Other Opinions*

Plaintiff contends the ALJ also improperly evaluated the medical opinions of treating providers Chad Mongrain, DO, and Tracy Johnston, DPT, PT. ECF No. 19 at 10-14. As the case is remanded due to the errors in evaluating Dr. McGinnis' opinions, upon remand the ALJ shall reassess all medical opinions in the record.

Upon remand the ALJ is instructed to update the medical evidence of record, including obtaining an updated consultative examination. The ALJ shall reconsider all medical evidence with the assistance of medical expert testimony. The ALJ is to reassess all medical opinions with the factors required by the regulations and to incorporate the limitations into the RFC or give reasons supported by substantial evidence to reject each opinion.

**B.**    **Plaintiff's Symptom Claims**

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's symptom testimony. ECF No. 19 at 17-19.

It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229,

1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely supported by the medical and other evidence of record. Tr. 23.

*1. Inconsistent with Objective Medical Evidence*

The ALJ found that Plaintiff's allegations were not consistent with objective findings. Tr. 23-24. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ noted that physical exam in August 2018 revealed tenderness to palpation of the left ankle with significant swelling and fluctuation and a painful gait; an MRI was ordered along with use of a lace up ankle brace and decrease in walking.  Tr. 22 (citing Tr. 336).[3]  The ALJ noted MRI of the left ankle in September 2018 showed a complete rupture of the peroneus brevis tendon; sequalae of mild sprains at the medial and lateral ligament structures with partial-thickness tearing of the anterior talofibular ligament; mild Achilles tendinopathy with subtle partial-thickness undersurface tears; and small tibiotalar joint effusion. Tr. 22 (citing Tr. 365-66, 422-23).  The ALJ noted a CE in October 2018 showed no findings upon physical exam aside from mild degenerative disc disease of the cervical spine.  Tr. 22 (citing Tr. 433-34, 437).  The consultative examiner, however, also noted Plaintiff's reports of chronic tendonitis and explained he had reviewed some orthopedic records suggesting bilateral ankle osteoarthritis, but that he had not reviewed any imaging, including the September MRI.  Tr. 437.  He noted Plaintiff's symptoms were exacerbated by walking and standing and indicated Plaintiff had moderate limitations in his ability to stand and walk.  *Id.*

The ALJ noted Plaintiff underwent left tendon surgical foot repair in February 2019.  Tr. 22 (citing Tr. 440-41).  The ALJ again noted findings from the February 2019 CE, explaining that Plaintiff's "consultative examination a month after surgery was nearly unremarkable except for some decreased ankle range of motion and antalgic gait."  Tr. 22-23 (citing Tr. 448-54).  As discussed *supra*, in relation to the medical opinion evidence, however, the ALJ misstated and/or minimized the findings from this exam.

The ALJ also noted findings including antalgic gait but improving balance from an appointment in June 2020 and noted his physical therapist's finding at that

---

[3] The ALJ provides an incorrect cite here, citing 2F/1-2; the records referenced appear at 2F/34-35, which is Tr. 335-336.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

time that Plaintiff continued to have "balance/stability limitations as well as limitations with prolonged standing." Tr. 23 (citing Tr. 633-34). Records from that 2020 visit show Plaintiff was approaching maximal medical improvement following surgery, and his provider noted that despite surgical repair on the left and physical therapy, Plaintiff had persistent pain and stiffness in the ankles, with objective findings including antalgic gait and reduced range of motion. Tr. 633-34. His physical therapist explained while he was improving, he still was still working on the ability to ambulate without compensation and he continued to have decreased tolerance in ability to stand on uneven surfaces. Tr. 634.

The ALJ provided only a brief summary of medical evidence and found that the record did not support limitations beyond those contained in the RFC. Tr. 23. However, much of the medical evidence cited supports Plaintiff's symptom claims, and as discussed in relation to the medical evidence, *supra*, the ALJ misstated evidence and failed to discuss relevant objective evidence. The ALJ's finding that Plaintiff's symptom claims are inconsistent with objective medical evidence is not supported by substantial evidence.

*2. Activities*

The ALJ also concluded that Plaintiff's activities were inconsistent with his allegations. Tr. 23. An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating

capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ noted "by 2020 Plaintiff reported recent cortisone injections last week resulted in 'good improvement,' and he had 'been doing things around the house about two hours a day or so.'" Tr. 23 (citing Tr. 633). It is well-established that a claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603. The Court also cannot affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Here, while the ALJ mentions Plaintiff had been doing some things around the house, the ALJ failed to provide any examples of household or other activities Plaintiff performed and this fact is briefly noted without any discussion of how it was considered in the disability analysis. *See* Tr. 19-25. Reviewing the decision as a whole, there is also no discussion or analysis of how Plaintiff's activities factored into the ALJ's rejection of Plaintiff's symptom reports, and such general findings are insufficient to undermine Plaintiff's symptom claims. *See* Tr. 19-25.

At the hearing Plaintiff testified that he could make breakfast, that he played games on a computer, and that he tried to do some housework and household projects. Tr. 50-52. He also testified, however, that he napped daily, had side effects from medication that were severe enough that he gave up driving, and that he could only stand for about 15 minutes at a time. Tr. 43, 50, 52. Without further explanation of the ALJ's reasoning, a finding that Plaintiff's activities were inconsistent with his symptoms claims is not supported by substantial evidence.

The ALJ failed to provide legally sufficient findings concerning the objective evidence, and the ALJ's only other reason for rejective Plaintiff's symptom complaints, that they are inconsistent with his activities, is legally insufficient. Even if the ALJ had provided adequate findings concerning the objective medical evidence, an ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 856. Further, in the absence of a clear and convincing reason to discount symptom reports, the limitations in a claimant's symptom reports must be made part of the RFC. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

The ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's symptom claims. Upon remand the ALJ shall reevaluate Plaintiff's symptom claims and their impact on each step of the sequential analysis and either incorporate them into the RFC or provide clear and convincing reasons to discount them.

C.  **Step-three and Step-five.**

Plaintiff argues the ALJ also erred in failing to conduct an adequate analysis and failing to find Plaintiff disabled at step-three, and in determining Plaintiff's RFC and relying on the vocational expert's response to an incomplete hypothetical at step-five. ECF No. 16 at 14-16, 19-20. Having determined a remand is necessary to readdress the medical source opinions and Plaintiff's subjective complaints, the Court declines to reach the other issues. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

Upon remand, the ALJ is instructed to perform the sequential analysis anew, including reconsidering the step-three and step-five analysis.

## CONCLUSION

Plaintiff argues the decision should be reversed and remanded for the payment of benefits. ECF No. 19 at 20. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d

at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). The Court will also not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

      Here, it is not clear that the ALJ would be required to find Plaintiff disabled, or disabled through the entire period at issue, if all the evidence were properly evaluated. The Court finds that further proceedings are necessary for the ALJ to reconsider the medical evidence, including conflicting medical opinion evidence, reevaluate Plaintiff's symptom claims, as well as to further develop the record and perform the five-step sequential evaluation anew. For these reasons, the Court remands this case for further administrative proceedings.

      The ALJ's decision is not supported by substantial evidence and not free of harmful legal error. On remand, the ALJ shall order a physical consultative examination and obtain all updated medical evidence. The ALJ shall reevaluate the medical evidence of record with the assistance of medical expert testimony, making new findings on each of the five steps of the sequential evaluation process, take the testimony of a vocational expert, and issue a new decision. The ALJ shall reassess all medical opinion evidence using the factors required by the regulations, and shall also reassess plaintiff's subjective complaints, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

      Accordingly, **IT IS ORDERED:**

      1.    Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

      2.    Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED January 31, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE